# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CATHERINE M. BRENNAN, | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-15-2931 |
| JOANNA "JOEY" STEVENSON, *et al.*, | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Catherine M. Brennan ("Plaintiff") brought an action in the Circuit Court for Baltimore City against Joanna "Joey" Stevenson and TotallyHer Media, LLC ("THM") (collectively, "Defendants"), alleging defamation in connection with an article written by Ms. Stevenson and published by THM. Now pending before the Court is Plaintiff's Motion to Remand and for Costs and Expenses. (ECF No. 16.) The issues have been briefed (ECF Nos. 16–1, 25 & 27), and no hearing is required, Local Rule 105.6 (D. Md. 2014). For the reasons explained below, Plaintiff's request for costs and expenses will be DENIED, but Plaintiff's Motion to Remand will otherwise be GRANTED.

*I. Overview and Procedural Background*

Plaintiff, a self-described lesbian activist in Baltimore, Maryland, maintains and contributes to numerous blogs that monitor gender-identity legislation. (ECF No. 2 ¶ 2.) Plaintiff opposes gender-identity laws because they "afford biological males protection at the expense of the rights of women and girls." (*Id.*)

According to Plaintiff, on July 23, 2015, Defendant Stevenson—a contributing author at AfterEllen.com, a website published by Defendant THM—authored an article in which she accused Plaintiff of "harassing and doxxing trans women on [Plaintiff's] websites." (*Id.* ¶¶ 9-10.)[1] Plaintiff believes this characterization is false: because she reposts information from public sources, she does not believe that she has "doxxed" or harassed anyone. (*Id.* ¶ 12.)

In response to Ms. Stevenson's article, Plaintiff filed suit on August 19, 2015, in the Circuit Court for Baltimore City, alleging one count of defamation. Plaintiff sought "damages in an amount to be proved at trial, but not less than $70,000, plus court costs and attorneys' fees," as well as "injunctive relief to prevent continuation of the defamation complained of." (*Id.* at 7.) Defendants filed a timely Notice of Removal to the United States District Court for the District of Maryland on September 28, 2015. (ECF No. 1.) Thereafter, Defendants filed separate motions to dismiss for lack of personal jurisdiction and for failure to state a claim. (ECF Nos. 7 & 11.)

On October 6, 2015, Plaintiff filed a Motion to Remand and for Costs and Expenses. (ECF No. 16.) Subsequently, the Court stayed briefing on Defendants' motions to dismiss until after its decision on Plaintiff's pending Motion to Remand. Defendants filed a response in opposition to that Motion on October 14, 2015 (ECF No. 25),[2] and Plaintiff replied on November 2, 2015 (ECF No. 27). The matter is now ripe for decision.

## II. Standard for Remand

Because federal courts are courts of limited jurisdiction, a cause of action is presumed to lie outside of that limited jurisdiction, and the burden of establishing otherwise rests upon the party asserting jurisdiction. *Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc.*,

---

[1] Plaintiff describes "doxxing" as "searching on the Internet for, and publishing, private identifying information about an individual, typically with malicious intent." (ECF No. 2 ¶ 11.) Doxxing is apparently understood to include "'outing' a person's sexual orientation or gender identity without that person's consent." (*Id.*)
[2] The response was filed by Defendant Stevenson. In a separate filing, Defendant THM gave notice that it joins in Ms. Stevenson's opposition. (ECF No. 26.)

683 F.3d 577, 583-84 (4th Cir. 2012). In particular, removal statutes are to be strictly construed, and doubts regarding the propriety of removal should be resolved in favor of remanding the case to state court. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir 1994).

## III. Analysis

### A. *Removability and Amount in Controversy*

"The removability of a case 'depends upon the state of the pleadings and the record at the time of the application for removal . . . .'" *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 367 (4th Cir. 2013) (quoting *Ala. Great S. Ry. Co. v. Thompson*, 200 U.S. 206, 216 (1906)). Where, as here, removal jurisdiction is premised on diversity of citizenship,[3] the sum demanded "in good faith in the initial pleading" is generally "deemed to be the amount in controversy." 28 U.S.C. § 1446(c)(2). Where the initial pleading does not demand a specific sum, the defendant may allege the amount in controversy in its notice of removal. *Francis*, 709 F.3d at 367. Moreover, section 1446(c)(2)(A) provides that the defendant may assert the amount in controversy in situations where the plaintiff (i) seeks nonmonetary relief or (ii) seeks damages, but state pleading practice either bars the plaintiff from demanding a specific sum or permits the plaintiff to recover in excess of the amount demanded.

When the defendant alleges the amount in controversy, that allegation "should be accepted" for purposes of conferring jurisdiction on the federal court unless it is "contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553 (2014). If the plaintiff does contest the defendant's allegation, the court may retain

---

[3] Section 1441(a), title 28, United States Code, provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[] may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." Among the actions that may be removed are those satisfying the requirements for diversity jurisdiction (*i.e.*, the parties have diverse citizenship, and the amount in controversy exceeds $75,000, exclusive of interest and costs). 28 U.S.C. § 1332(a).

3

jurisdiction "'if the . . . court finds, by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold." *Id.* at 553-54 (quoting 28 U.S.C. § 1446(c)(2)(B)); *see also Osia v. Rent-a-Ctr., Inc.*, Civ. No. DKC-15-1200, 2015 WL 3932416, at *5 (D. Md. June 25, 2015) ("When federal jurisdiction is invoked by the filing of a notice of removal, it is the defendant who bears 'the burden of demonstrating by competent proof that the complete-diversity and amount-in-controversy requirements are met.'" (quoting *Heartland–Mt. Airy of Cincinnati OH, LLC v. Nick H. Johnson, P.C.*, No. 1:15-cv-86, 2015 WL 667682, at *2 (S.D. Ohio Feb. 17, 2015))).

### B. *Plaintiff's Request for Damages*

In her Complaint, Plaintiff requests "money damages in an amount to be proved at trial, but not less than $70,000." (ECF No. 2 at 7.) As a preliminary matter, Plaintiff's *ad damnum* clause appears to violate the Maryland Rules of Court. Specifically, Rule 2-305 (2014) provides that "a demand for a money judgment that does not exceed $75,000 *shall include* the amount of damages sought," while "a demand for a money judgment that exceeds $75,000 *shall not specify* the amount sought, but shall include a general statement that the amount sought exceeds $75,000" (emphases added). By pleading a floor of $70,000, Plaintiff may have hoped to skirt federal jurisdiction while simultaneously leaving open a path to a larger recovery at trial—but the Maryland Rules do not permit such pleading.

Plaintiff, who is herself a licensed attorney in the State of Maryland[4] and who is represented by local counsel, was likely aware of the technical deficiency of her *ad damnum* clause. In fact, she latches on to this deficiency in her Motion to Remand, citing *Gallagher v. Federal Signal Corp.*, 524 F. Supp. 2d 724 (D. Md. 2007), for the proposition that the Court must construe Plaintiff's demand for "not less than $70,000" as a demand for $70,000, period.

---
[4] *See* ECF No. 25–2.

4

*Gallagher* had in turn relied on *Hoang v. Hewitt Avenue Associates, LLC*, 936 A.2d 915 (Md. Ct. Spec. App. 2007), a case in which the Court of Special Appeals of Maryland had revised an *ad damnum* clause to convert a prayer for damages "in excess of $100,000" to one for $100,000 exactly. Plaintiff urges the Court to adopt a similar approach here, striking "not less than" and leaving her with a complaint for $70,000—$5,000.01 below the jurisdictional threshold.

Plaintiff's theory may have superficial appeal.[5] The problem is that neither *Hoang* nor *Gallagher* purported to construe Rule 2-305 as it exists *today*. Rather, those opinions applied a prior version of the Rule, which stated simply that "a demand for a money judgment shall include the amount sought." Md. R. Ct. 2-305 (1998). As the *Hoang* court explained, the Court of Appeals of Maryland adopted the 1998 version of Rule 2-305 after concluding that "notice is the primary purpose of pleading." 936 A.2d at 930. *Hoang* recognized that "[a] demand for damages 'in excess of' a stated amount . . . only informs the defendant that the plaintiff will not be satisfied with an award lower than the amount stated, without giving notice of the maximum sum the plaintiff is seeking." 936 A.2d at 931. Yet the current version of Rule 2-305 has largely eliminated the notice function of the 1998 version. While plaintiffs must still plead specific damages up to and including $75,000, plaintiffs *may not* specify larger sums: instead, plaintiffs

---

[5] That said, it is not clear why the Court should rely on state pleading rules in determining whether the federal amount in controversy is satisfied. *See Grubbs v. Gen. Elec. Credit Corp.*, 405 U.S. 699, 705 (1972) ("[T]he removal statutes . . . are intended to have uniform nationwide application. 'Hence the Act of Congress must be construed as setting up its own criteria, irrespective of local law, for determining in what instances suits are to be removed from the state to the federal courts.'" (quoting *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 104 (1941))), *superseded by statute on other grounds as stated in Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1545 n.7 (5th Cir. 1991); *Johnson v. Citibank, N.A.*, 63 F. Supp. 3d 545, 556 (D. Md. 2014) ("[T]he formal requirements for pleadings under the Maryland rules do not apply once a case is removed to federal court . . . .").

Section 1446(c)(2)(A)(ii), Title 28, United States Code, does reference state pleading rules, but it does so for the narrow purpose of identifying two *particular* circumstances in which a defendant may assert the amount in controversy in its notice of removal. Merely because Congress saw fit to make state rules relevant for these *particular* circumstances, it does not follow that Congress intended state rules to control under *all* circumstances.

In any event, even if the Court accepted Plaintiff's proposition that state pleading rules could properly inform the analysis of the amount in controversy here, the Court is not persuaded that the *ad damnum* editing rule of *Hoang* remains good law. Thus, as discussed below, the Court will (1) read Plaintiff's *ad damnum* clause as it is written and (2) consider whether Defendants have adequately shown that the amount in controversy exceeds Plaintiff's $70,000 floor by at least $5,000.01.

with higher-value claims must aver that the "amount sought exceeds $75,000." Md. R. Ct. 2-305 (2014). As a consequence, Maryland plaintiffs with claims for $80,000, $800,000, and $8 million will, if they abide by the Rules of Court, draft identical *ad damnum* clauses: this being so, it is unclear what utility, if any, *Hoang*'s *ad damnum* editing rule retains.[6]

Thus, while Plaintiff's request for damages "in an amount to be proved at trial, but not less than $70,000," technically violates Rule 2-305 in its present incarnation, the Court is disinclined to reward Plaintiff for her improper pleading by remanding on the basis of an outmoded state-court rule. Instead, the Court will read Plaintiff's *ad damnum* clause precisely as it is written—*i.e.*, as a floor rather than a specific sum—and it will proceed to consider whether Defendants have shown, by a preponderance of the evidence, that the amount in controversy is at least $5,000.01 greater than that floor. *See Francis*, 709 F.3d at 367.

Defendants argue that "Maryland takes a liberal view of damages in defamation actions—and such damages are . . . bounded largely by the jury's sense of what is fair in the circumstances." (ECF No. 25 at 11.) To bolster their claim, Defendants have cobbled together a jumble of jury verdicts from various jurisdictions, dredged up from the recesses of WestlawNext, which demonstrate that some number of attorney-plaintiffs have, over the years, recovered more than $75,000 in defamation suits.[7]

Plaintiff, attaching her own string of underwhelming verdicts to her reply brief, shows that two can play at Defendants' game. More to the point, evidence of jury awards in vaguely analogous cases cannot substitute for concrete proof of the amount in controversy *here*. As Judge Chasanow observed in a recent case in which the defendants sought to remove on similar

---

[6] To be clear, the Court of Special Appeals has not repudiated *Hoang*. Even so, no court—aside from *Gallagher*—has cited it for its *ad damnum* editing rule.
[7] Strikingly, only one of the sample verdicts was returned in this District—and that verdict involved a putative law student (not an attorney) whose outsized recovery was reduced to $40,000 on remittitur. (ECF No. 25–11.)

grounds (*i.e.*, on the basis of awards secured in factually related cases), to "allow removal of this case based on Defendant[s'] speculation as to a possible final damage award would eviscerate the amount in controversy requirement." *Osia*, 2015 WL 3932416, at *5.

Rather than carrying their burden of proof, Defendants would deflect the Court's attention from the dearth of evidence corresponding to the damages at stake in this case by gesturing toward damages awarded in other, unrelated cases. Their endeavor has failed.

### C. *Plaintiff's Prayer for Injunctive Relief*

Aside from damages, Plaintiff requests "injunctive relief to prevent continuation of the defamation complained of." (ECF No. 2 at 7.) The contours of Plaintiff's proposed injunction are not altogether clear, though the Court assumes she desires some kind of retraction or deletion of the allegedly offending article and perhaps a restraint on further defamatory speech.[8]

Like requests for damages, "requests for injunctive relief must be valued in determining whether the plaintiff has alleged a sufficient amount in controversy." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 639 (4th Cir. 2010). The United States Court of Appeals for the Fourth Circuit applies the "either-viewpoint" rule, ascertaining the "value of an injunction for amount in controversy purposes by reference to the larger of two figures: the injunction's *worth* to the plaintiff or its *cost* to the defendant." *Id.* (emphases added). More precisely, "the relevant inquiry is whether 'the "direct pecuniary value" of the right the plaintiff seeks to enforce, or the cost to the defendant of complying with any prospective equitable relief[,] exceeds $75,000.'" *Mostofi v. CitiMortgage, Inc.*, Civ. No. DKC-11-2177, 2011 WL 4596225, at *3 (D. Md. Sept. 30, 2011) (quoting *Lee v. Citimortgage, Inc.*, 739 F. Supp. 2d 940, 946 (E.D. Va. 2010)). Defendants here posit that both the value an injunction would confer on Plaintiff and the cost

---

[8] In weighing the monetary value or cost of injunctive relief in this case, the Court makes no finding whatsoever as to the propriety (or, for that matter, the constitutionality) of the relief that Plaintiff seeks.

7

such injunction would impose on Defendant Stevenson easily exceed $5,000.01. Once again, however, Defendants' theory is an exercise in speculation.

Regarding the value to Plaintiff, Defendants contend that if Plaintiff "truly believed that [the accusations in Ms. Stevenson's article] caused her damages in no event less than $70,000 after just a few weeks, surely an injunction preventing those statements from being uttered in perpetuity is worth at least $5,000 to her, and likely much more." (ECF No. 25 at 14.) Defendants offer nothing of substance to adorn their naked conjecture; their only citation is to an old Supreme Court case wherein there was no question that the value of an injunction, from the plaintiff's perspective, exceeded the jurisdictional amount. *See Glenwood Light & Water Co. v. Mut. Light, Heat, & Power Co.*, 239 U.S. 121 (1915).[9] In more recent times, courts have made clear that, for purposes of calculating the amount in controversy, proposed injunctions must be amenable to a viable economic appraisal. *Compare Heartland of Portsmouth, OH, LLC v. McHugh Fuller Law Grp., PLLC*, No. 1:15-cv-007, 2015 WL 728311 (S.D. Ohio Feb. 19, 2015) (defendant's conclusory assertions that reputational harm, loss of goodwill, and loss of business opportunities for plaintiff nursing facility "clear[ly]" exceeded $75,000 were insufficient to satisfy defendant's burden of proof on removal), *and Crump Ins. Servs., Inc. v. All Risks, Ltd.*, No. 1:10-cv-01589-JOF, 2010 WL 4810281 (N.D. Ga. Nov. 19, 2010) (defendant provided insufficient proof that invalidation of nonsolicitation provisions in plaintiffs' employment agreements would yield more than $75,000 of value to plaintiffs), *with Lanham Ford, Inc. v. Ford Motor Co.*, 101 F. App'x 381 (4th Cir. 2004) (plaintiff's request for a full and fair hearing before termination of its lucrative franchise could be valued both because plaintiff could have continued operating in the interim and because the hearing itself had economic value, *i.e.*, the

---

[9] The plaintiff in *Glenwood Light & Water Co.* sought an injunction barring the defendant, a competitor, from maintaining electric poles on the plaintiff's side of the street. 239 U.S. 121, 124 (1915).

prospect of success multiplied by the value of the franchise as a going concern). Plainly, the proposed injunction here is noneconomic in character, and the Court cannot evaluate its worth to Plaintiff—at least not at the pleading stage.

Regarding the cost to Defendants, and to Ms. Stevenson in particular, Defendants submit that, "were the injunction granted, Ms. Stevenson would be prohibited from expressing her views about the conduct of a prominent public advocate on a matter of public concern" and that "a constitutional deprivation of this sort must carry more than a *de minimis* value." (ECF No. 25 at 10.)[10] In so stating, Defendants seem to have missed that, before any injunction could enter, the Court would necessarily confront and resolve the question whether Ms. Stevenson has defamed Plaintiff. And as Plaintiff is quick to point out, "defamatory speech is not protected by the First Amendment"; consequently, "to deprive Defendants of the ability to continue engaging in such speech is not worth a dime." (ECF No. 27 at 7.)[11] Plaintiff's argument better comports with constitutional case law. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974) ("[T]here is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust, and wide-open' debate on public issues." (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964))); *see also United States v. Alvarez*, 132 S. Ct. 2537, 2560 (2012) (Alito, J., dissenting) (collecting cases) ("Time and again, this Court has recognized that as a general matter false factual statements possess no

---

[10] To support their proposition, Defendants cite a string of crusty old cases from outside this Circuit, dating to an era when the amount in controversy requirement applied with equal force to federal question and diversity suits. Indeed, some of these cases do suggest that esoteric values (*e.g.*, First Amendment rights) may be sufficiently treasured to overcome any jurisdictional dollar barrier. However, Defendants appear to have overlooked another case in this line, *McGaw v. Farrow*, 472 F.2d 952 (4th Cir. 1973). In *McGaw*, the Fourth Circuit flatly rejected a theory of "symbolic damages" stemming from the denial of a request by plaintiff-soldiers to use Army facilities for a memorial service, writing that "a claim not measureable in 'dollars and cents' fails to meet the jurisdictional test of amount in controversy." *Id.* at 954; *see also Dixon v. Edwards*, 290 F.3d 699, 711 n.18 (4th Cir. 2002) (declining to reach plaintiff-bishop's theory that either the value of her Free Exercise rights or the subjective worth of her access to parish property exceeded $75,000).

[11] For that matter, the Court suspects that it would violate public policy were the Court to place any economic value whatsoever on the freedom to engage in defamatory speech.

intrinsic First Amendment value."). Thus, because any equitable remedy here would enjoin worthless, unprotected speech, the cost of the proposed injunction to Defendants cannot supply the requisite $5,000.01 to satisfy the jurisdictional amount.

The amount in controversy requirement is not a procedural nicety; it is a jurisdictional constraint. And "[c]ourts may not engage in conjecture, speculation, or judicial star gazing to determine jurisdiction." *Kamau v. Slate*, No. 4:11cv522-RH/CAS, 2013 WL 1883257, at *3 (N.D. Fla. Apr. 4, 2013). Because Defendants have not carried their burden of proving that the amount in controversy exceeds $75,000, the Court must grant Plaintiff's Motion to Remand.

## *IV. Jurisdictional Discovery*

Defendants argue in the alternative that, if the Court is not persuaded by their analysis concerning the amount in controversy (it is not), the "appropriate course is to afford the parties opportunity for discovery on the issue." (ECF No. 25 at 18.) While the Supreme Court has recognized that district courts may order discovery on the question whether the jurisdictional threshold has been satisfied, *Dart Cherokee*, 135 S. Ct. at 554, "the decision of whether or not to permit jurisdictional discovery is a matter committed to the sound discretion of the district court," *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory*,*"* 283 F.3d 208, 216 n.3 (4th Cir. 2002). Defendants here have offered no particular reason why jurisdictional discovery might be expected to shine more light on the amount in controversy than the parties have shed through their briefs. "[W]here, as here, [Defendants] simply want[] to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction," *id.*, the Court sees no reason to grant such a request. It is better, the Court concludes, to allow this matter to proceed to the merits in state court—where it belongs.

*V. Costs and Expenses*

Finally, Plaintiff requests an award of costs and actual expenses (including attorneys' fees) that she incurred in connection with Defendants' removal action. Plaintiff correctly notes that section 1447(c), title 28, United States Code, authorizes such relief. However, as the Supreme Court explained in *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005), "the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney[s'] fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."

The Court is not persuaded that Defendants acted without an objectively reasonable basis. The Supreme Court's very recent *Dart Cherokee* opinion clarifies that a removing defendant, in the notice of removal, need only plausibly allege that the amount in controversy exceeds $75,000.[12] Given that low bar and the close dollar figure in Plaintiff's Complaint ("not less than $70,000"), the Court concludes that Defendants acted reasonably when they filed their notice of removal—even though their efforts were ultimately unsuccessful. Plaintiff's request for costs and expenses will be denied.

*VI. Conclusion*

"[T]he Supreme Court has held that a plaintiff with a claim potentially exceeding $75,000 'may resort to the expedient of suing for less than the jurisdictional amount . . . .'" *Mary L. Martin, Ltd. v. State Auto Prop. & Cas. Ins. Co.*, Civ. No. RDB-13-1089, 2013 WL 2181206, at *2 (D. Md. May 17, 2013) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938)). Plaintiff here has done just that: she has pleaded damages below the jurisdictional threshold and requested an injunction that cannot feasibly be priced at this time. Plaintiff's

---

[12] It is only where the plaintiff or the court questions the basis for removal that the defendant must *prove* its theory by the preponderance of the evidence. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553-54 (2014).

11

defamation claim, if cognizable, may be worth $70,000, or less, or more: it is not for this Court to speculate. Rather, since Defendants did not prove by a preponderance of the evidence that the amount in controversy exceeds $75,000, the Court is jurisdictionally bound to remand this action to the Circuit Court for Baltimore City. That court is competent to resolve this state law dispute. Accordingly, an Order shall enter DENYING AS MOOT WITHOUT PREJUDICE the pending Motions to Dismiss filed by Defendants Stevenson and THM (ECF Nos. 7 & 11) and DENYING Plaintiff's request for costs and expenses but otherwise GRANTING Plaintiff's Motion to Remand (ECF No. 16).

DATED this 24th day of November, 2015.

BY THE COURT:

/s/
James K. Bredar
United States District Judge